HOOD *v.* STATE.

4-7126                                                    175 S. W. 2d 205

Opinion delivered November 1, 1943.

*E. W. Brockman,* for appellant.

*Jim C. Cole,* for appellee.

SMITH, J. The prosecuting attorney of the judicial circuit of which Grant county is a part, filed a petition in the circuit court of that county to abate a dance hall operated near Sheridan, in that county, as a public

nuisance. A temporary restraining order was granted, which, on final hearing, was made permanent. After hearing testimony and the argument of counsel, the court made the finding of fact that "Public disturbances, the unlawful drinking of intoxicating liquor, quarrels, affrays, or general breaches of the peace are frequent and the unlawful sale of beer and other beverages on Sunday are frequent," and upon this finding made the temporary order permanent. It was ordered, upon this finding, that the hall be closed and padlocked, but that the defendant owner and operator of the hall might, within ten days, remove her personal and household effects, but that "all costs of the proceedings must be paid before taking out any of the goods, and merchandise, or nickelodeon, from the building, including the merchandise stock."

Thereafter, Melba Hood and Vernon Ward, partners doing business under the firm name of A & H Novelty Company, filed an intervention praying the release of a nickelodeon owned by them from the closing order. This intervention was heard and the prayer thereof denied, from which judgment is this appeal.

The testimony heard upon the abating order is not incorporated in the record, and it will, therefore, be conclusively presumed that the testimony was sufficient to sustain the court's order. The owner of the dance hall did not appeal. The intervention was heard upon a "stipulation as to the facts," in which it was recited that interveners were the sole owners of an electrically operated music machine, called a nickelodeon; "that said music machine, by permission of Susie Wilson, (the operator of the dance hall), was placed in the building operated by her and was in said building at the time of the rendition of the orders herein set out; that in the operation of said music machine, music is produced by inserting a nickel in a slot in said machine after which a record will be played; that at the conclusion of the playing of said record the machine automatically stops; that said machine, while it was located in the building aforesaid, was operated by patrons of the said place operated by the defendant, Susie Wilson; that at regular bi-weekly intervals an agent of the interveners would call at said

place, unlock' said machine and remove therefrom the money accumulations and paid to the said Susie Wilson a percentage thereof." No other testimony appears in the record, except that covered by the "stipulation as to the facts" above referred to.

For the reversal of the order refusing to direct the return of the nickelodeon, it is insisted that this music machine was not a nuisance *per se*, nor was it a gambling device, or other unlawful instrumentality, and that the order for its detention was unauthorized by law.

The General Assembly, at its 1915 session, passed an Act, No. 109, p. 408, entitled, "An Act to Define Certain Public Nuisances and to Provide for the Abatement Thereof." This Act, with the subsequent amendments thereof, appears as Chapter 134 of Pope's Digest, entitled, "Public Nuisances," §§ 10909 to 10926, Pope's Digest.

This Act of 1915, as originally passed, related only to the sale of intoxicating liquors sold in violation of the law, and § 1 thereof appears as § 6196, C. & M. Digest. This § 6196, C. & M. Digest, was amended by Act 331 of the Acts of 1937, p. 1246, by "further defining certain public nuisances and providing for the abatement thereof." This Act 331, approved March 26, 1937, amended § 6196, C. & M. Digest, to read as follows:

"Section 6196. The conducting, maintaining, carrying on, or engaging in the sale of alcoholic liquors, including wines and beer of all kinds, in violation of any of the laws of this state, in any building, structure, or place within this state, and the conducting, maintaining, carrying on, or engaging in the operation of any so-called roadhouse or other similar place of entertainment, or of any so-called tourist camp, or of any public dance hall or place, in violation of any of the laws of this state, and all means, appliances, fixtures, appurtenances, materials and supplies used for the purpose of conducting, maintaining, or carrying on of either of such unlawful or unlawfully operated businesses or occupations or places of business or occupation, are hereby declared to be public nuisances, and may be abated under the provisions

of this Act. Any person, persons, firm or corporation conducting, maintaining, carrying on, or engaging in any of the businesses or occupations or undertakings aforesaid, who shall suffer or permit violations of any of the laws of this state in, upon, or about the premises operated by him, them, or it, shall be deemed and held to be conducting, maintaining, carrying on, and engaging in the said business, or occupation, or undertaking in violation of the laws of this state.''

At the same 1937 session of the General Assembly another Act, No. 118, was passed, p. 419, entitled ''An Act to Define Certain Public Nuisances and to Provide for the Abatement Thereof.''

If there is any conflict between these two Acts passed at the 1937 session of the General Assembly—which we do not decide—Act 331, as the last enactment, would be given effect.

It was contemplated in Act 118 that its provisions should be enforced by proceedings against the owner of the place, which, through the manner of its operation, had become a public nuisance, and § 9 of this Act, which appears as § 10917, Pope's Digest, defines who are to be deemed owners and the manner of securing service upon such persons. Act 331 of 1937 appears as § 10918 of Pope's Digest.

It is asserted that interveners are not owners within the meaning of § 10917, Pope's Digest, and that their music machine, or nickelodeon, cannot be subjected to its provisions. We do not agree.

The testimony heard by the court, which is not before us, may have shown that music of some kind was essential to the operation of a dance hall, and that the nickelodeon was employed for that purpose; that it became and was an essential instrumentality in creating the nuisance. It was stipulated that the patrons of the place operated the machine by placing nickels in the slot, which started the mechanism producing the music to the tune and time of which patrons might dance or otherwise regale themselves. A relation partaking of the nature of a partnership existed between interveners and the op-

crator of the dance hall. They participated in the earnings of the nickelodeon, which they divided twice weekly, in a fixed proportion, their earnings being dependent upon the extent to which the machine was patronized. But however this may be, the provisions of Act 118 were enlarged by Act 331 and, in all probability, to take care of situations such as are here presented. By the later Act, ". . . All means, appliances, fixtures, appurtenances, materials and supplies used for the purpose of conducting, maintaining, or carrying on of either of such unlawful or unlawfully operated businesses or occupations or places of business or occupation, are hereby declared to be public nuisances, and may be abated under the provisions of this act."

Here, the stipulated fact is that the machine was operated for the mutual profit of the owner of the dance hall and the interveners and was, therefore, subject to the order of the court in abating the nuisance. Section 10923, Pope's Digest, authorizes the sale of appliances and instrumentalities which contribute to and constitute a part of the nuisance, for the payment of the costs of the abatement proceedings.

The judgment is, therefore, affirmed.

McFADDIN, J., (dissenting). The basic question is whether the appellants' property can be sold to pay the costs of a judgment rendered against Wilson, the operator of the dance hall. In answering the question in the affirmative, the majority has necessarily made two holdings, with neither of which can I agree.

1. The majority has given the word "owner," as used in § 10917 of Pope's Digest, a much broader meaning than I understand the statute gives to the word. The statute provides: "In this act 'owner' shall mean any person, persons, or corporation having an actual legal interest, vested in possession, in any building or place that may become a nuisance under the provisions of this act. And when one or two or more joint owners shall have been served with the notice herein prescribed, the cause shall proceed against said owner, on whom notice

has been served, and such proceeding shall not be a bar to subsequent proceedings against one or all of said joint owners not heretofore proceeded against; and if the notice herein prescribed cannot be served on the owner or owners of the building or place that may become a nuisance under the provisions of this act, by reason of non-residence or otherwise, then and in that case such notice may be served on any agent or agents or trustee that may have charge of or be in control of said building or place, and the cause shall proceed against said agent, agents or trustee in all respects as if he or they were the actual owner or owners of said building or place.''

This statute should be strictly construed. ''Statutes passed in the exercise of the police power of the State should be strictly construed, while all statutes of a penal nature, whether civil or criminal, must be construed strictly in favor of those whom they affect.'' 59 C. J. 1106. The appellants were the admitted owners of the nickelodeon, but were not the owners of the dance hall or any part of it, and the above statute on ownership applies to owners of the ''building or place'' and does not include owners of property in the building or place.

2. The majority opinion recites: ''A relation partaking of the nature of a partnership existed between interveners and the operators of the dance hall.'' Thus, the majority is creating some sort of hybrid relation between the owners of the nickelodeon and the operator of the dance hall, even in the face of the agreed statement of facts in this case, which recites: ''That the interveners, Melba Hood and Vernon Ward, are engaged in business under the firm name of A & H Novelty Company, with principal place of business in Pine Bluff, Arkansas, and are and were the sole owners of an electrically operated music machine described as follows, to-wit: No. 312 Model—Wurlitzer, Serial No. 49357.''

Since the agreed statement says that the appellants were the ''sole owners,'' I cannot see how the dance hall operator ever acquired any interest or title in the music box in the face of this agreed statement, and if the dance hall operator never acquired any ownership in the nickel-

odeon, then the owners of the nickelodeon could not have been in any kind of partnership with the owner of the dance hall; and their property could not be taken from them to pay the costs in the proceedings against the owner of the dance hall.

Therefore, I respectfully dissent.